## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| **ANGELETTE BLOUNT,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **1:18-cv-03842-CAP-JKL** |
| | ) | |
| | ) | |
| **NATIONAL CREDIT SYSTEMS,** | ) | |
| **INC.,** | ) | |
| **Defendant** | ) | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Comes now Plaintiff by and through her undersigned attorney and does hereby move the Court to enter a default judgment against Defendant National Credit Systems, Inc. pursuant to Fed. R. Civ. P. 55(b). Plaintiff requests this Court enter a default judgment against the Defendant pursuant to Federal Rule of Civil Procedure 55(b) in the amount of $1,000.00 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). Plaintiff also requests a default judgment be entered against Defendant for additional statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. ¶ 1681n(a)(1)(A). Further, she requests this Court to schedule a hearing to determine her actual damages (pursuant to 15 U.S.C. § 1692k(a)(1) and 15 U.S.C.

§§ 1681n and 1681o) and to determine the "costs of the action" and reasonable attorney's fees.

In support of this request, Plaintiff relies on her original Complaint, the Clerk's entry of default, and the Brief in Support of this Motion filed contemporaneously herewith. Further, a proposed Order granting this Motion is not being filed contemporaneously herewith as Plaintiff is specifically requesting a hearing to determine her damages, costs of the action, and attorney's fees.

## STATEMENT OF MATERIAL FACTS

1.    Plaintiff filed her complaint on August 13, 2018. (Doc. 1).

2.    Defendant was served with a copy of the Complaint on August 20, 2018. (Doc. 3).

3.    Plaintiff's Answer was due on September 10, 2018.   Fed. R. Civ. P. 12(a)(1)(A).

4.    On September 10, 2018, an employee of Defendant contacted Plaintiff's attorney via telephone and requested a ten day extension to file a response; Plaintiff's attorney agreed.

5.    Defendant did not file a motion for extension of time to file an answer with the court.

6.     Defendant did not file an answer by September 20, 2018, which is ten days later that the due date for Defendant's answer.

7.     Defendant is a sophisticated business entity that has been a party to more than 300 civil actions in U.S. District Courts throughout the country according a PACER search conducted on September 21, 2018.

8.     The clerk entered an entry of default for Defendant on September 24, 2018. (See Docket).

9.     Plaintiff is a natural person residing in Henry County, Georgia.  (Compl. ¶ 5).

10.    Plaintiff is a veteran of the United States Navy.  (Compl. ¶ 10).

11.    National Credit Systems, Inc. is a Georgia corporation with its principal place of business located at 3750 Naturally Fresh Boulevard, Atlanta, Georgia 30349. (Compl. ¶ 6).

12.    Defendant maintains its registered office at 289 S. Culver Street, Lawrenceville, Georgia 30349 and names its registered agent as C T Corporation System.  Defendant can be served with Summons and a copy of this Complaint at this address. (Compl. ¶ 7).

13.    The debt which is the subject of this lawsuit is a consumer debt, specifically payments allegedly due for the rental of a mobile home which Plaintiff resided in with her family.  (Compl. ¶ 11).

14.   Plaintiff leased a mobile home from Clover Ranch Manufactured Home ("Clover Ranch") from October of 2012 until February of 2016.  (Compl. ¶ 12).

15.   Plaintiff paid all of her rental obligations to Clover Ranch between October of 2012 and February of 2016. (Compl. ¶ 13).

16.   In February of 2016, Plaintiff terminated her lease with Clover Ranch Manufactured Home and vacated the premises.  (Compl. ¶ 14).

17.   In February of 2016, Plaintiff paid a termination fee to Clover Ranch in addition to her monthly rental fee for February of 2016.  (Compl. ¶ 15).

18.   Beginning on or about July of 2016, Clover Ranch hired Defendant to collect an alleged amount due of $3,325.66 from Plaintiff.  (Compl. ¶ 16).

19.   Defendant began sending correspondence on behalf of Clover Ranch to Plaintiff in an attempt to collect the amount of $3,325.66 from Plaintiff.  (Compl. ¶ 17).

20.   In October of 2016, Defendant began furnishing information about Plaintiff to the credit reporting agencies Equifax, Trans Union, and Experian, stating that Plaintiff owed a past due amount of $3,325 to Clover Ranch.  (Compl. ¶ 18).

21.   In March of 2018, Plaintiff sent a letter to Experian disputing the information being furnished by Defendant.  (Compl. ¶ 19).

22.    Experian forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report.  (Compl. ¶ 20).

23.    In April of 2018, Defendant reported to Experian that Plaintiff owed a past due amount of $3,325 to Clover Ranch. (Compl. ¶ 21).

24.    In May of 2018, Plaintiff sent a dispute letter to Trans Union which stated that the balance being reported on her credit report by Defendant was incorrect.  (Compl. ¶ 22).

25.    Attached to Plaintiff's dispute letter to Trans Union were copies of the checks which Plaintiff had paid to Clover Ranch from October of 2012 until February of 2016.  (Compl. ¶ 23).

26.    Trans Union forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report.  (Compl. ¶ 24).

27.    Defendant verified to Trans Union that the information being reported by Defendant on Plaintiff's credit report was correct.  (Compl. ¶ 25).

28.    In May of 2018, Plaintiff sent a dispute letter to Equifax which stated that the balance being reported on her credit report by Defendant was incorrect.  (Compl. ¶ 26).

29.    Attached to Plaintiff's dispute letter to Equifax were copies of the checks which Plaintiff had paid to Clover Ranch from October of 2012 until February of 2016.  (Compl. ¶ 27).

30.    Equifax forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report.  (Compl. ¶ 28).

31.    Defendant verified to Equifax that the information being reported by Defendant on Plaintiff's credit report was correct. (Compl. ¶ 29).

32.    Defendant does not conduct its own reinvestigations of consumer disputes received from credit reporting bureaus.  (Compl. ¶ 30).

33.    Defendant outsources reinvestigations of consumer credit report disputes to a third party named Blaise Information Systems which is located in India.  (Compl. ¶ 31).

34.    Defendant failed to conduct reasonable investigations upon receiving notice of Plaintiff's disputes from three consumer reporting agencies.  (Compl. ¶¶ 19-31, 47).

35.    One of the principal purposes of Defendant is the collection of consumer debts.  (Compl. ¶¶ 16-18, 37; Defendant's website[1]).

36.    Defendant regularly attempts to collect consumer debts alleged to be due another.  (Compl. ¶¶ 16-18, 38; Defendant's website).

37.    Defendant is engaged in the collection of debts from consumers using the mail and telephone. (Compl. ¶¶ 16-18, 39; Defendant's website)

38.    Defendant furnishes information about consumer debts to credit reporting bureaus.  (Compl. ¶¶ 16-18, 40; Defendant's website)

39.    Defendant furnished incorrect information to credit reporting agencies about a consumer debt allegedly owed by Plaintiff.  (Compl. ¶¶ 16-31, 41)

40.    Defendant attempted to collect debts from Plaintiff which she did not owe. (Compl. ¶¶ 19-31, 42)

---

[1] Defendant's website  https://www.nationalcreditsystems.com/Company.aspx specifically states the following: "ABOUT NCS - Who is National Credit Systems (NCS)?  We are a specialized collection firm helping apartment owners and managers recover money that is rightfully owed to them by former residents who have not fulfilled their lease obligations.  The company was designed as, and continues to be operated as, an agency specifically focused on collecting debt for the apartment industry. Founded in 1991, National Credit Systems has grown to provide collection services to more apartment owners and managers than any other company in the country. We are licensed to collect debts throughout the U.S. and provide a full range of collection services to the multifamily industry." (Last accessed 10/09/2018)

41.    Plaintiff has suffered emotional distress including but not limited to embarrassment, annoyance, loss of sleep, loss of hope, and humiliation as a result of Defendants' behavior.  (Compl. ¶¶ 32, 44, 48).

42.    Plaintiff has suffered loss of funds including postage, mileage to and from her attorney's office, and loss of credit opportunity as a result of Defendants' behavior. (Compl. ¶¶ 33, 45, 48).

43.    Plaintiff has been turned down for housing opportunities due in part to negative information being reported by Defendant.  (Compl. 34).

44.    Plaintiff is currently without a permanent residence. (Compl. ¶ 35).


## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 8(b)(6) provides in part that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."  Defendant has been served in accordance with Fed. R. Civ. P. 4 and has not filed any responsive pleadings or moved to set aside the entry of default.  The failure of the Defendant to answer renders all factual allegations of Plaintiff's Complaint as admitted.

Under Federal Rules of Civil Procedure 55, the entry of a default judgment is a two-step process. First, the clerk must enter a party's default upon a showing, by affidavit or otherwise, that the party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). Second, and upon the entry of default, the party seeking default judgment "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In considering any default judgment, the Court must examine jurisdiction, liability, and damages. *See* Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353 (S.D. Ga. 2004).

1. This court has jurisdiction.

Subject matter jurisdiction of this court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 & 1337. Venue in this district is proper in that the Plaintiff resides here, Defendants transact business here, and the conduct complained of occurred here. Plaintiff is a resident of Henry County, Georgia. Defendant is a Georgia corporation with its principal place of business located at 3750 Naturally Fresh Boulevard, Atlanta, Georgia 30349, and a registered agent located at 289 S. Culver Street, Lawrenceville, Georgia 30349. Plaintiff's two causes of action are based upon claims under federal consumer protection statutes, the Fair Debt Collection Practices Act "FDCPA", 15 U.S.C. §§1692 *et seq.*, and the Fair Credit Reporting Act "FCRA", 15 U.S.C. §§ 1681 *et seq.*; both of those statutes

specifically grant subject matter jurisdiction to this court.  *See* 15 U.S.C. § 1692k(d); 15 U.S.C. § 1681p.

2.  Defendant is liable under both the FDCPA and FCRA.

Defendant National Credit Systems, Inc. is both a debt collector under the FDCPA and a furnisher of credit information covered by the FCRA.  Defendant's actions of reporting false information about Plaintiff's credit after receiving Plaintiff's dispute letters constitute violations of the FCRA and FDCPA.  Thus, Defendant is subject to liability under the FDCPA and FCRA.

a.  FDCPA Liability

The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers. *See* 15 U.S.C. § 1692(e); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010).  To prevail on an FDCPA claim, a plaintiff must establish that: (1) [she][has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.  Frazier v. Absolute Collection Serv., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2010).

i.  Defendant is a debt collector.

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Plaintiff's complaint alleged that Defendant regularly used the mail and telephone to collect consumer debts alleged to be due another. This averment was admitted by Defendant's failure to file an answer. Additionally, Defendant's own website states that Defendant is a "specialized collection firm helping apartment owners and managers recover money that is rightfully owed to them by former residents who have not fulfilled their lease obligations." Defendant is a collection agency who attempts to collect unpaid rents from consumers on behalf of apartment complexes. Defendant is a debt collector under the statutory definition.

> ii.  <u>The debt is a consumer debt.</u>

A consumer debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The debt which is the subject of this lawsuit arises from alleged payments due on the rental of a mobile home. The payment a consumer makes to obtain housing for their family is, on its face, for "personal, family or household" purposes. A review of case law shows FDCPA

"debts" may include (among others) membership dues in a recreational campground, rental obligations, mortgage foreclosure, and homeowners' association fees. See Surber v. McCarthy, Burgess & Wolff, Inc., No. 14-0309-CG-M, 2015 U.S. Dist. LEXIS 61158 (S.D. Ala. May 11, 2015). Plaintiff's alleged debt for back payments on a lease for a mobile home was a "consumer debt" covered by the FDCPA.

iii. Defendant's actions were debt collection activity covered by the statute.

Defendant's actions are specifically described in the FDCPA as an example of debt collection activity which is covered by the statute. 15 U.S.C. 1692e(8) specifically describes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false" as an example of activity which is a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Defendant's conduct is a collection activity covered by the FDCPA.

b. FCRA liability

Defendant is a furnisher of information about Plaintiff's credit history to credit reporting agencies. Plaintiff submitted three separate dispute letters containing detailed payment histories to all three major credit reporting agencies. These disputes were forwarded to Defendant who subsequently verified the inaccurate

information about Plaintiff to all three credit reporting bureaus. Defendant did not review the information provided or conduct a reasonable investigation, and therefore, Defendant violated its duties under the FCRA.

i. Plaintiff is subject to the FCRA.

Congress, recognizing abuses in the burgeoning credit reporting industry, originally "enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, (2007). The FCRA imposes obligations on CRAs and users of consumer information and provides for enforcement by various federal agencies. See, e.g., 15 U.S.C. § 1681s. The act also expressly creates a private cause of action, enabling consumer suits for willful or negligent noncompliance with its requirements. Id. §§ 1681n-o. Plaintiffs may recover actual damages for negligent violations, 15 U.S.C. § 1681o(a)(1), and actual or statutory and punitive damages for willful ones, id. § 1681n(a)(1)-(2); Safeco, 551 U.S. at 53.

In 1996, Congress substantially amended the FCRA. See, e.g., H.R. Rep. No. 108-396, at 1753-54 (2003) (Conf. Rep.). Among the changes adopted was a new section governing the responsibilities of so-called "furnishers" of information to CRAs. Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, ch. 1, sec. 2413, § 623, 110 Stat. 3009-426, 3009-447 to -449 (codified as amended at

15 U.S.C. § 1681s-2). This addition was intended to close an identified "gap in the FCRA's coverage," whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers. S. Rep. No. 103-209, at 6 (1993); Chiang v. Verizon New Eng., Inc., 595 F.3d 26, 34-35 (1st Cir. 2010). A private cause of action exists for individuals seeking remedies for furnishers' violations of § 1681s-2(b). *See, e.g.*, id. at 36; Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005).

In October of 2016, Defendant began furnishing information about Plaintiff to the credit reporting agencies Equifax, Trans Union, and Experian, stating that Plaintiff owed a past due amount of $3,325. In March of 2018, Plaintiff sent a letter to Experian disputing the information being furnished by Defendant. Experian forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report. Defendant verified the inaccurate information to Experian and continued to report the false information.

In May of 2018, Plaintiff sent a dispute letter to Trans Union which stated that the balance being reported on her credit report by Defendant was incorrect. Attached

to Plaintiff's dispute letter to Trans Union were copies of the checks which Plaintiff had paid to Clover Ranch from October of 2012 until February of 2016. Trans Union forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report. Defendant verified to Trans Union that the information being reported by Defendant on Plaintiff's credit report was correct, even though the information was not correct.

In May of 2018, Plaintiff sent a dispute letter to Equifax which stated that the balance being reported on her credit report by Defendant was incorrect. Attached to Plaintiff's dispute letter to Equifax were copies of the checks which Plaintiff had paid to Clover Ranch from October of 2012 until February of 2016. Equifax forwarded Plaintiff's dispute information to the Defendant so that Defendant would investigate the disputed information being reported on Plaintiff's credit report. Defendant verified to Equifax that the information being reported by Defendant on Plaintiff's credit report was correct, even though the information was not correct.

ii.   Defendant violated its duties under the FCRA.

After receiving notice […] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher] shall […]  conduct an investigation with respect to the disputed information.  15 U.S.C. § 1681s-2(b)(1)(A).  The furnisher shall  review all relevant

information provided by the consumer reporting agency.  *See* id. at 1681s-2(b)(1)(B).  The furnisher shall then report the results of the investigation to the consumer reporting agency.  *See* id. at 1681s-2(b)(1)(C).  If the investigation finds that the information is incomplete or inaccurate, the furnisher shall report those results to all other consumer reporting agencies to which the furnisher furnished the information.  *See* id. at 1681s-2(b)(1)(D).  If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, the furnisher is required to (i)  modify that item of information; (ii) delete that item of information; or (iii)  permanently block the reporting of that item of information.  *See* id. at 1681s-2(b)(1)(E).

Defendant was reporting information to credit reporting agencies that stated Plaintiff owed unpaid rents to her previous landlord.  Plaintiff submitted dispute letters on three separate occasions to the credit reporting agencies, each of which contained a detailed check payment history proving that she was not indebted to her previous landlord. Upon receipt of these disputes from the credit reporting agencies, Defendant failed to conduct a reasonable investigation. Defendant used a third party vendor in India to process its consumer disputes.  Defendant did not review the proof submitted by Plaintiff which showed that she was clearly not indebted for past rents. Defendant failed to conduct a reasonable investigation and subsequently failed to

modify the furnished information as required by statute. Defendant's actions violated the plain language of the FCRA. Defendant is liable for violations of the FCRA.

3. Damages

Plaintiff's complaint made claims for statutory, actual, and punitive damages plus attorney's fees and costs. Plaintiff requests that the court set a hearing date for Plaintiff to provide testimony and documentary evidence about her damages and attorney's fees.

Plaintiff has suffered from emotional distress and such damages are unliquidated. Such actual damages are not liquidated and do not lend themselves to a statement of calculation. *See* Williams v. Trader Pub. Co.,218 F.3d 481, 486-487 (5th Cir. 2000); Morrison Knudsen Corp., v. Fireman's Fund Ins. Co., 175 F.3d 1221 (10th Cir. 1999); Burrell v. Crown Central Petroleum, Inc., 177 F.R.D. 376, 386 (E.D.Tex.1997).

Emotional distress damages in consumer cases have been upheld for varying amounts. *See, e.g.,* Adams v Phillips, 2002 U.S. Dist. LEXIS 24888 (E.D. LA 2002) ($225,000 actual damages and $275,000 punitive damages based upon general and economic damage theories); Anderson v. Conwood Co., 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($50,000 in actual damages awarded in absence of testimony other than

worry, stress and anxiety);  Ayers v. v. Experian, Case Number 3:03cv1048 (E.D. VA 2004)(Judgment taken on offer of judgment $95,000 for claimed damages of emotional distress and mortgage denial under 15 U.S.C. 1681e(b));  Bell v. May Department Stores (Missouri 2000, jury award $50,000 actual damages);  Brown v. Experian, (D. Conn. April 16, 2004) ($50,000 jury verdict for emotional distress damages and lost credit in reinvestigation case under 15 U.S.C. §1681i);  Bryant v. TRW Inc., 689 F.2d 72 (6th Cir. 1982) ($8,000 for embarrassment and humiliation, attorney's fees $13,705);  Collins v. Retail Credit Co., 410 F. Supp. 924 (E.D. Mich. 1976) ($21,750 for loss of reputation, embarrassment, in recognition of the "many subtle and indirect adverse effects upon a personal, social and economic life"; $50,000 in punitive damages and $21,000 in attorney's fees);  Conseco Finance Servicing Corp. v. Carlson, District Court, Creek County, Sapulpa Division, State of Oklahoma, No. CJ-00-227, Feb. 14, 2002 (jury award of $1.35 million; $450,000 in actual damages for emotional distress and $900,000.00 in punitive damages); Guimond v. Trans Union, 45 F.3d 1329 (9th Cir. 1995) (jury awarded $275,000 for humiliation and mental distress damages available under FCRA following remand); Johnson v. MBNA (D. Va. 2002) (jury award of $90,300 for emotional distress and damage to reputation sustained against credit furnisher MBNA for negligent investigation of consumer's dispute in violation of FCRA section 1681s-2(b) appeal

reported at 357 F.3d 426 (4th Cir.2004);   Jones v. Credit Bureau of Huntington, Inc.,
399 S.E.2d 694 (W. Va. 1990) ($4,000 even though erroneous credit report was
corrected one week after publication; verdict was sustainable as humiliation,
emotional distress, or injury to reputation or credit rating.);   Morris v. Credit Bureau,
563 F. Supp. 962 (S.D. Ohio 1983) ($10,000 for stress, anxiety, humiliation, injury
to his reputation, his work, his family, his sense of well-being); Northrop v. Hoffman
of Simsbury, Inc., 6 Conn. Ops. 447 (Apr. 24, 2000) (jury verdict of $100,000 in
compensatory damages and $500,000 in punitives remitted by Chief Judge Covello
to $125,000 for punitives, no compensatory);   Pinner v Schmidt, 617 F. Supp. 342
(E.D. La. 1985), 805 F.2d 1258 (5th Cir. 1991) ($100,000  actual and $100,00
punitive remitted to $25,000 actual);   Stevenson v. TRW, 987 F.2d 288 (5th Cir.
1993) ($30,000 in mental anguish and embarrassment damages, plus $20,700 in
attorney's fees);   Thomas v. Trans Union, (D. Or. 2002)  (jury awarded $5 million
punitive, $300,000 actuals damage for emotional distress. Judge remitted the
punitive to $1 million with $100,000 fees);   Thompson v. San Antonio Retail
Merchants Ass'n, 682 F.2d 509 (5th Cir. 1982) ($10,000 actual damages for
humiliation and mental distress even when no out-of-pocket expenses); Zotta v.
Nations Credit, Case No: 4:02-CV-1650 (E.D. MO 2004)(Jury verdict against

furnisher under 15 U.S.C. § 1681s-2b for $87,000 on claims for emotional distress associated with negligent noncompliance with 15 U.S.C. § 1681s-2(b)).

A hearing is necessary to determine Plaintiff's damages because they are unliquidated.

## **CONCLUSION**

For the aforementioned reasons, Plaintiff moves this Court to enter a default judgment against Defendant for violations of the FDCPA and FCRA for statutory damages, actual damages, and punitive damages plus attorney's fees and costs in an amount to be determined by a hearing in front of this court.

Respectfully submitted this 11th day of October, 2018.

**ARMOR LAW, LLC**
**/S/Chris Armor**
_____

Christopher N. Armor
Georgia Bar No. 614061
160 Clairemont Avenue, Suite 200
Decatur, GA 30030
Phone: (678) 954-5674
Fax: (404) 592-6102
Email: chris.armor@armorlaw.com

CERTIFICATE OF COMPLIANCE
I hereby certify that this document was prepared in size 14 Times New Roman font.

/S/ Chris Armor